3190060 people of the state of Illinois Appley versus Marlon Coleman appellant. Afternoon. Mr Carol if you're ready to proceed. Right. Your Honors, Brian Carol representing the opponent. Mr. Marlon Coleman. This court should reverse the first stage dismissal of Mr. Coleman's post conviction petition, where he made a least arguable showing that his counsel on direct appeal was ineffective. First, it is at least arguable that it was unreasonable for counsel to fail to raise a preserved viable Fourth Amendment claim that was supported by controlling the US Supreme Court precedent, and would have thrown out some of the most damning evidence against Mr. Coleman. Before the accident in this case, even took place. The US Supreme Court in McNeely held that the dissipation of alcohol and the suspects blood alone is not enough to justify a blood draw without a warrant. Rather, one must look to the totality of the circumstances to determine whether sufficient exigent circumstances exist. The evidence is shows that the circumstances did not justify a warrantless draw. Although the case involved a fatal accident. The police did not forego warrant, because they reasonably believed obtaining one would have impeded their ability to respond to an emergency. And we know this because Officer Hulse, who had firsthand knowledge of the law enforcement needs at the time, testified that there was time to obtain a warrant, and that in fact started to draft one. He abandoned his efforts, not because the emergencies demanded it, but because an assistant state's attorney directed him to get the blood drawn without a warrant. And besides Hulse's testimony about there being time for a warrant, other evidence such as there's, there are multiple officers responding to the case, such as Officer Irving who transported Coleman to the police station, who could have assisted in obtaining a warrant. Also, the evidence was that a judge was always available in a very short drive away. So, because the police did not act under a reasonable belief that obtaining a warrant would have interfered with other pressing duties, the warrantless blood draw would have been unjustified, even under the US Supreme Court's subsequent holding in Mitchell. And it was also at least arguable, arguably unreasonable for counsel to have failed to argue that the trial court erred in admitting the blood alcohol evidence without expert retrograde extrapolation evidence. Courts have recognized that estimating a defendant's blood alcohol level at the time of an accident from results of tests performed hours later is a complex matter generally beyond the ability of laypersons, and as such, expert testimony is necessary to explain it. And the appellate court in Floyd held that it's improper to simply assume that the defendant was in the elimination stage the entire time, and thus his blood alcohol level was continually dropping from the time of the accident to the time of the testing. Because different factors, such as defendant's weight, age, what he was eating, what he drank, how much he drank, and his rate of drinking, and other factors, you know, it's possible that his blood alcohol was rising at the time of the accident. And so it's possible that his blood alcohol level at the time of the testing was higher than at the time of the accident. And because of that, an expert testimony is needed to give the jury the proper information they need to assess whether the blood alcohol, the results of the blood alcohol testing, you know, established beyond a reasonable doubt that his blood alcohol level was above the legal limit at the time of the accident. And finally, it was arguably prejudicial for appellate counsel not to raise these issues. Since both of the issues were preserved, it would have been the state's burden to prove that, or to show that the introduction of the blood alcohol evidence was harmless beyond a reasonable doubt. And in this case, three of the charges of DUI were based solely on the blood alcohol level. So the evidence clearly affected the jury's determination on those counts. And because the jury was also instructed that it could just presume he was intoxicated based on the blood alcohol level, all of the DUI counts were negatively affected by the improper introduction of the blood alcohol evidence. And therefore, you know, it arguably can't be said that the introduction of the evidence was harmless beyond a reasonable doubt. And therefore, because Coleman made an arguable showing that his appellate counsel was ineffective for not raising these issues, we ask that this court reverse his dismissal of his first stage petition and remand for a second stage proceedings. Are there any questions for Mr. Carroll? No questions. If not, Ms. Bella. Good afternoon, Justices. May it please the court. My name is Jamie Bella and I represent the people of the state of Illinois as appellee in this case. So the issue before this court is whether the trial court erred in summarily dismissing the defendant's first stage post conviction petition and finding in doing so that the petition raised frivolous and patently meritless issues. The standard of review on such a case is a de novo in the case where the trial court summarily dismisses a post conviction petition for under the Post Conviction Relief Act. So under the Post Conviction Relief Act, the trial court may summarily dismiss the petition if the trial court determines that it advances an undisputably meritless legal theory, such as the one that is completely contradicted by the record. The defendant filed a post conviction petition in this case on May 18th, 2018, raising several issues and the trial court dismissed that petition on August 1st, 2018. Defendant argues that the motion that the trial court erred in dismissing the petition because of the forthcoming issues that were not raised by appellate counsel. In defendant's argument, as noted in the state's brief, is that the defendant relies on the 2019 case of People v. Eubanks. As the defendant noted in his argument, the United States Supreme Court Case McNeely was a Missouri case that did not involve a death. The police noticed the person who was driving was unable to maintain his lane and was not driving properly. So when he was pulled over, the police asked him to perform sobriety tests and he refused. And then in the police vehicle on his way to the police station, he told the officer that he would refuse any testing, so breath testing, blood testing. At that point, the officer rerouted and went to the hospital instead, and that's where they did a warrantless blood draw. At the time that the defendant's direct appeal took place, Eubanks had not been decided and the controlling cases in Illinois at the time was People v. Jones. So in reply, the defendant points out that McNeely was decided before the defendant's direct appeal and that U.S. Supreme Court precedent takes priority over an Illinois Supreme Court case. But I would argue in response to that that the Jones case relied on Schmerber, which is also a United States Supreme Court case. And in that case, it did involve an injury and the blood draw was taken at the hospital where the defendant was injured and was taken to the hospital. So the difference in this case is the defendant was not injured and he was taken to the hospital specifically for the blood draw. However, under Jones at the time, the controlling case law permitted him to do that. So defendant's argument is that, and this is a very important distinction, I think, you know, in getting into all the different federal and state Supreme Court cases and trying to decide this issue. The important thing to remember is, as defendant points out in his reply, that counsel could have argued under McNeely just as trial counsel did. But the question in this case is whether counsel was ineffective for not doing so. So, of course, the appellate counsel could have argued that McNeely would find otherwise in a case like this. But whether or not it was unreasonable, objectively unreasonable under Strickland for him to fail to do that is another question. And I think in this case, the answer is no, because the controlling case at the time was Jones. And under that case, it was clear that this court in deciding that case would have relied on Jones and found in favor of the state in that case. So I think that the first issue fails on both the objectively unreasonable as well as the prejudice prong. And then as far as the second argument regarding the retrograde extrapolation evidence, the state notes, and we'd stand largely on our brief with respect to this issue, the... Can we back up for a second? I don't mean to interrupt you, but I guess I'm a little confused on why the McNeely case would not be controlling here. It was issued a year before the arrest here and eight years or so after Jones. I think the reason McNeely is... McNeely is... So in the Supreme Court precedent, there's the Schmerber cases, which involve a fatal accident or an accident involving personal injury. And then there are other... Under McNeely, these are cases where the question before the court in McNeely specifically is whether the natural metabolization of alcohol in the bloodstream presents a per se exigency that justifies the exception of the Fourth Amendment. That wasn't the question in this case because the argument was not that there was a per se exigency. And this is brought up in also... Of course, the state maintains that Eubanks is not relevant because it didn't exist at the time. However, in Eubanks, the court did point out that... Let me find it in my notes here. The law may recognize general rules that apply. However, a per se exigency, which is what McNeely was decided on, would not apply. So the state cannot have a law that says in all cases, in every case where there's a personal injury or in all cases of DUI where the defendant refuses, we can force a blood draw under the state's... The motorist laws for consent. And in Eubanks... So before Eubanks went to the Supreme Court, the appellate court found that the statute, the 501C2.2C2 statute unconstitutional on its face. And the Supreme Court reversed that, but they found it unconstitutional as applied to that defendant. And so the question in this case wasn't whether or not it would apply because there's a per se across the board exigency, but because the case falls within the general rule, which is when there's personal injury or death, that the general rule would apply. And then the defendant would have to then show that even though the general rule would apply, in this case, it should not apply because these delays. In this case, the delays in Eubanks, there's significant differences in the delay. There was more than two and a half times the delay. It was seven hours before the blood draw and then eight and a half hours before the urine. Here, there was a total elapsed time from the time of the arrest until the blood draw, which was two hours and 55 minutes. Also, in Eubanks, the court found, based on a portion of the McNeely case where the court said it's possible that there are other officers available to aid in getting a warrant. And the court, however, didn't lay out exactly how that would function, how it would be decided whether or not those officers were available. In a case like this, when police officers are processing a scene, and in this case, there was two different scenes, the defendant fled and went to another location. So there were some officers at that location and some officers at the accident scene. So those officers were processing the scene. And defendant's contention is that because there were other officers, one of them must have been able to go and get the warrant. But there's no bright line rule as far as how that would operate. And it's significant, I think, that in this case, the officer, Officer Hulse, is the one who began to do a warrant application before he spoke with the state's attorney and then went to the hospital. It was his day off. So if there was an abundance of officers around playing crossword puzzles, then it wouldn't make sense that there's an off-duty officer on his night off processing a warrant and taking the defendant to the jail while the other officers were processing the scene. So I think that the differences that begin in the Supreme Court, and they slowly trickle through these cases through Eubanks, even though it wasn't decided at the time, down to showing that this case is just different than those cases. And McNeely did not involve an accident. So if there was no accident in this case, then it's probably likely that a warrantless blood draw would be unconstitutional. But in this case, there was, and even in Eubanks, the court said that that general rule would still apply unless there was some reason to think that it should not. And I don't think that the delays in this case come even close to those in Eubanks. Eubanks was in a first district case. You know, of course, in the third district, we have many cities and towns and municipalities that do not have the resources and the staff and the police departments to necessarily achieve the kind of quick turnaround sometimes. In Chicago, if they have eight or 10 officers, they may have one or two to perform the same duties in some of these smaller communities. So the fact that it was an overall eight and a half hour delay in Eubanks is something that should strike everyone as significantly different than this case. On top of that, the amount of evidence that showed defendants, you know, inebriation at the time, Officer Vonderheide, I'm not sure if I'm saying that right, when the defendant was brought into the holding cell and was sitting down, he couldn't sit without sliding himself down the wall. Every person who encountered the defendant on that date and at that time described him as, one of them actually, Officer Holtz, described him as being in a drunken stupor. The nurse testified that the defendant was argumentative, smelled of alcohol, and was behaving very drunk. The gentleman, Gordon, who chased after the defendant when he fled the scene and blocked him in, testified that he was very drunk when he got out of the car. When Officer Holtz went to, or not Holtz, the first officer, Irving, who arrested the defendant and put him in the car, said the defendant was just staring and wasn't responding and he had asked multiple times. When Holtz got to the scene and asked him to roll down the window, he encountered an overwhelming scent of alcohol, and so there was overwhelming evidence in that regard. And that, you know, that segues into the defendant's second argument about the retrograde extrapolation evidence. Prior to the trial, the defense counsel had asked or filed a motion to suppress the evidence of the expert extragrade extrapolation evidence. And then at trial, right before Dr. Koch began her testimony, the prosecutor informed the court that after a conversation with the defense counsel, the two had decided that they would not be putting on the expert extragrade retrograde extrapolation evidence, in that she would just be citing the number. So it's not required for the extrapolation evidence. So defense counsel's point is well taken that jurors generally are not capable of making those kind of calculations on their own without the aid of an expert. However, the court has said, you know, when it's not close, and in this case, I think it was point, I don't have the number in front of me, 0.2 something, it was not close. That expert extragrade, oh my gosh, retrograde extrapolation is not required because, you know, in a case like that, there's just not enough. There's too much room between the point oh eight and a point to. I don't want to misstate what the number was it was a point 273.273. Thank you. So, there's, there's, there's a lot of space between a point oh eight and a point 273 and combined with all the other evidence of the defendant's behavior, and what the other witnesses had observed and what the nurse reported. There was definitely not need for the expert extra grade overlap. And that can retrograde extrapolation. So, the. With regards to any of the remaining arguments that the people stand on our brief with respect to any of the remaining issues, unless the court has questions with respect to any of the arguments that we discussed. I don't have questions. I don't see any additional questions so thank you as well. Mr Carroll for rebuttal. Your microphone. You're on mute. As a state's argument that McNeely was not the controlling president at the time. US Supreme Court precedent trumps any state court holdings on the force amendment issues. And the Jones that Illinois Supreme Court Jones case that interpreted server is saying that the dissipation of alcohol and the suspects blood is a per se. Extensity or exigent circumstance. And, you know, McNeely directly overturned that reasoning so McNeely was directly on point and it directly undermined the holding in Jones. It was controlling precedent at the time trial counsel raised it at the time. And if the While you banks had not been decided at the point if the appellate attorney in you banks were able to reach the issue before you banks, you know, who was decided in the appellate counsel in this case could have And in terms of the not Know the officers involved in this case, whether or not they could have helped in the delays you banks didn't claim to be setting the, the, the lower threshold of amount of delay and getting a Blood draw It was just, you know, stating was basically just applying McNeely McNeely to the facts of that case. And the fact is, in this case, we have a first person account of whether or not the police had Time to get a warrant and that was from officer holes and his statement was, yes, we did have time. He knew how many officers were involved in the case. He knew what a law enforcement efforts were needed at the time. And he said, we have time and there was no evidence contradicting him introduced introduced a trial. As to the Blood alcohol. The retrograde extrapolation evidence.  Saying that his blood alcohol level at the time of testing. precluded any finding that his level at the time of the accident would have been below the Legal limit is pure speculation. Oh, no, he if he was still in the absorption Stage, he could have been peaking at the time of his testing and we don't have any expert testimony saying, well, you know, Even if he was peaking, then we can still say, you know, reasonably say is blood alcohol level at the time of the accident. Would still have been above the legal limit. You know, it may have been, but we don't know. You know, I'm not an expert. I can't, you know, I don't think we can just presume that's the case. And, you know, as the, that was the case in the Nevada case that Floyd, the appellate court's decision and Floyd relied on. In that case, the appellant or the defendants blood alcohol level at the time of testing was above the legal limit. And there the court held that it would be was improper just to assume that it was His blood level would also be above the legal limit at the time of the accident. Let's say we don't, although there's other evidence about the people's observations of Coleman suggesting that he might have been under the influence Appellate counsel wouldn't didn't have to show that The evidence That he for sure would not have been found Or for sure would have been acquitted. It's not a sufficiency of the evidence test is purely a is it Harmless beyond a reasonable doubt, did the blood alcohol evidence influence the jury's determination. And we still argue that it's arguable that it did. And therefore, he was arguably prejudiced by appellate counsel's failure to raise these issues. So unless you have any other questions we ask that this court reverse the dismissal of his first stage petition. Thank you. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you. As soon as possible. And with that, we are adjourned. Thank you. Thank you.